IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00430-WJM-MJW

JOHN ERNEST DADE,

      Applicant,

v.

WARDEN WANDS,

      Respondent,

_____

RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241
_____

MICHAEL J. WATANABE, United States Magistrate Judge

      This matter is before this court pursuant to an Order of Reference to United

States Magistrate Judge issued on July 12, 2011, by District Judge William J. Martínez.

(Docket No. 31).

      Petitioner, John Ernest Dade, is a federal prisoner who is incarcerated at FCI

Florence in Colorado. Before the court for a report and recommendation is the

petitioner's (Amended) Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.  §

2241 (hereinafter "the petition") (Docket No. 7). Respondent filed an Answer to Petition

for Writ of Habeas Corpus (Docket No. 24) (response to order to show cause why the

petition should not be granted).  The court has considered the petition and the answer

as well as applicable Federal Rules of Civil Procedure, statutes, and case law and has

taken judicial notice of the court's file. The court now being fully informed makes the

following findings, conclusions of law, and recommendation. Because the petitioner is

proceeding without counsel, the court has "construe[d] his pleadings liberally, but [has

not] act[ed] as his advocate." *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

Petitioner challenges the Bureau of Prisons' (BOP) use of the Inmate Financial Responsibility Program (IFRP), 28 C.F.R. §§545.10-545.11, to deduct monies from his trust fund account to pay a fine assessed by the United States District Court for the Northern District of Idaho ("sentencing court") in his criminal case.  Petitioner asserts that the BOP lacks authority to fix a payment schedule during the period of his incarceration.  He further complains that while he was incarcerated at USP-Lompoc, prison staff removed $85.00 a month from his trust fund account, which exceeds the sentencing court's order that he pay $25.00 per quarter.  Petitioner alleges that he refused to participate in the voluntary payment program for approximately five years, but BOP staff members threatened him and used intimidation tactics to force him to participate.  For relief, petitioner asks the court to: (1) order the BOP to cease deducting IFRP payments from his account until there is a final adjudication of proceedings in the state sentencing court; (2) define certain terms, such as "garnishment" and "voluntary"; (3)  refund all IFRP deductions from his inmate trust account; (4) order the BOP to desist from using "strong arm tactics" to collect IFRP payments; and, (5) enter an order to enforce an "original judgment" that his payments should be limited to $25.00 per quarter.  Petition, at 5.  Respondent concedes that Petitioner has exhausted his administrative remedies.  (Docket No. 15).

The court first addresses Respondent's argument that petitioner may not bring his claims in a § 2241 proceeding.  A petition under § 2241 attacks the execution of a sentence.  *See Bradshaw v. Story*, 86 F.3d 164, 166-67 (10th Cir. 1996).  To the extent petitioner is challenging the fine imposed by the sentencing court in his criminal case, or

the sentencing court's authority to delegate to the BOP the task of establishing a schedule for payment of the court-ordered fine, he must file a motion for relief under 28 U.S.C. § 2255 in the sentencing court. *Id.* (holding a petition under § 2241 attacks the execution of a sentence, while a § 2255 motion attacks the validity of a judgment and sentence).  However, petitioner's claim contesting the BOP's authority under the IFRP to establish and enforce payment amounts he must follow in connection with the court-ordered fine implicates the execution of his sentence and therefore is cognizable in this § 2241 proceeding.  *See McGee v. Martinez*, 627 F.3d 933, 937 (3rd Cir. 2010); *United States v. Diggs*, 578 F.3d 318, 319-320 (5th Cir. 2009); *Matheny v. Morrison*, 307 F.3d 709, 711-12 (8th Cir. 2002); *Davis v. Wiley*, 260 F. App'x 66, 68 n.2 (10th Cir. 2010) (unpublished) (citing *Matheny*).  The court recommends that petitioner's claim be denied on the merits because the BOP's operation of the IFRP is in accordance with federal law and the Constitution. *See* 28 U.S.C. §2241(c)(3).

I. Background

Respondent has detailed the following relevant case history, which generally has not been disputed by the petitioner.  Petitioner was convicted in the United States District Court for the Northern District of Idaho of the following offenses: transmitting threatening interstate communications, in violation of 18 U.S.C. § 875(c); interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(1); interstate stalking, in violation of 18 U.S.C. § 2261A(2)(b)(i); and, use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Answer, Ex. A, Decl. of Gilbert Lyde, at ¶ 9. The sentencing court imposed a 336-month aggravated sentence and assessed a $5,000 fine.  *Id.*, attach. 4, at 5.  The Ninth Circuit affirmed petitioner's conviction on

appeal, but vacated his sentence and remanded for resentencing. *See United States v. Dade*, 136 F. App'x 973, 975 (9th Cir. 2005).  On remand, the sentencing court imposed an identical sentence of imprisonment and a $5,000 fine. Answer, Ex. A, attach. 5, at 2, 6.  The sentencing court ordered that "Defendant shall submit nominal payments of not less than $25 per quarter while incarcerated through the [IFRP]." *Id.*, at 6.  The Ninth Circuit affirmed in *United States v. Dade*, 275 F. App'x 600, 600-01 (9th Cir. 2008).

Petitioner's history of participation in the IFRP during his incarceration is as follows.  Petitioner was in "unassigned" status from November 10, 2003 to December 29, 2003, pending his unit team's development of a payment plan. Ex. A, ¶ 16 and attach. 9; *see also id.*, attach. 1, BOP Program Statement 5380.08, Inmate Financial Responsibility Program ("P.S. 5380.08"), at 13.  Between December 29, 2003, and February 8, 2007, petitioner was in a "Participates" status due to his agreement to participate in the IFRP, and his acknowledgment, in writing, that he would make payments of $25.00 per quarter, beginning in June 2004.  Ex. A, ¶ 17, and attach, 10 (Program Review dated December 29, 2003); *id.*, attach. 1, at 14.  Petitioner's financial obligation remained in effect while his sentence was corrected following his appeal, because the sentencing court did not order a stay of collection.  Ex. A, ¶ 12, and attach 5.  Between February 8, 2007, and April 28, 2010, petitioner was in "Temporarily Exempt" status, meaning that he was unable to participate in the IFRP because of medical or psychological restrictions that prevented him from working. Ex. A, ¶ 18, and attach. 9; attach. 1, at 13.  Petitioner has been voluntarily participating in the IFRP since April 28, 2010.  Ex. A, ¶ 19.  On October 21, 2010, petitioner signed a contract in which he agreed to "submit payments toward satisfaction of the financial obligation(s)

4

indicated on this form in accordance with the payment plan outlined below." *Id.* at ¶ 15, and attach. 8.  He also acknowledged that a "staff member has provided [him] with information regarding the potential consequences of a refusal . . . to participate in the [IFRP]." *Id.*  At petitioner's most recent program review in March 2011, he again agreed to continue his voluntary participation in IFRP and to contribute $25.00 per quarter.  Ex. A, ¶ 19, and attach. 6.  Currently, petitioner has an outstanding balance of $4,772.84 on the $5,000 fine imposed by the sentencing court.  Ex. A, ¶ 13, and attach. 11.

II. Discussion

The purpose of the IFRP is to "encourage[ ] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10; *see also* § 545.11(a) (financial obligations include a fine, an order for restitution, and/or a special assessment imposed as part of a criminal judgment).  Under the program, prison staff assist an inmate in developing a financial plan to meet those obligations, and monitor the inmate's progress under the plan.  *Id.* § 545.11. The BOP sets payment amounts based on the inmate's financial profile, including "the inmate's specific obligations, institution resources, and community resources."  *Id.* § 545.11(b).  An inmate is responsible for maintaining progress in fulfilling the financial obligations of the plan.  *Id.*  Participation in the IFRP is voluntary, but if an inmate declines to participate, or to comply with a financial plan created pursuant to it, he will lose certain privileges.[1]  *Id.* § 545.11(d).

---

[1]The loss of privileges resulting from an inmate's refusal to participate in the IFRP include: (1) notification to the Parole Commission; denial of furlough; denial of performance pay above the maintenance pay level, bonus pay, or vacation pay; denial of certain work and UNICOR assignments; restrictions on monthly commissary spending; denial of certain housing assignments; denial of community-based program placement; denial of release gratuity; and, denial of incentives for participation in residential drug treatment programs. *Id.* § 545.11(d)(1)-(11).

Several Circuit Courts of Appeal have upheld the BOP's authority to establish and operate the IFRP.  *See*, *e.g.*, *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990) (holding that constitutional challenge to IFRP failed because program "serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation") (citation omitted); *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (noting that the IFRP "has been uniformly upheld against constitutional attack"); *Dorman v. Thornburgh*, 955 F.2d 57, 58-59 (D.C. Cir. 1992) (holding the IFRP does not deprive inmates of constitutional right to due process); *Davis*, 260 F. App'x at 69 (holding that "the "BOP is within its constitutional authority to establish and enforce payment amounts Davis must make towards the court-ordered special assessment and restitution"); *see also James v. Quinlan*, 866 F.2d 627, 630 (3rd Cir. 1989).

Petitioner complains that the BOP has used the IFRP to increase unlawfully the amount of deductions from his trust fund account.  The court finds that petitioner fails to demonstrate a violation of the federal regulations.  Minimum quarterly or monthly payments for non-UNICOR and grades 1 through 5 UNICOR inmates are designated in 28 C.F.R. § 545.11(b)(1).  However, the regulations authorize prison officials to exceed the designated minimum payment where the inmate's "specific obligations, institution resources, and community resources" indicate that a higher payment is warranted.  *See* 28 C.F.R. § 454.11(b)(1) and (2).  Petitioner's vague allegations that officials at USP-Lompoc deducted $75.00 a month from his trust fund account for a period of time are

therefore insufficient to show a violation of federal law.[2]   *See McGhee*, 166 F.3d at 887

(rejecting inmate's claim that his unit team's unilateral decision to accelerate his

payments violated IFRP regulations); *see also Davis*, 260 F. App'x at 69 (rejecting

inmate's due process claim challenging BOP's use of the IFRP to increase the amount

he was paying on a quarterly basis).

     Petitioner also fails to demonstrate a violation of the sentencing court's order.

The sentencing court directed petitioner to "submit nominal payments of *not less than*

$25.00 per quarter while incarcerated through the [IFRP]." Ex. A, attach. 5.  (Emphasis

supplied).  Petitioner thus cannot show that the BOP is constrained by court order or the

federal regulations to limit its deductions to $25.00 per quarter.

     With regard to petitioner's claim that he has been coerced to participate in the

IFRP, the Tenth Circuit further recognized in *Davis* that while refusal to participate in the

IFRP may have punitive consequences, *see* 28 C.F.R. § 545.11(d), none of the benefits

which may be denied are constitutionally guaranteed. *See e.g.*, *Ingram v. Papalia*, 804

F.2d 595, 596 (10th Cir.1986) ("The Constitution does not create a property or liberty

interest in prison employment").  Moreover, mere inducements-such as the BOP's threat

to alter petitioner's place of confinement-without more, "do[ ] not infringe on a prisoner's

protected liberty interest." *Dunn v. White*, 880 F.2d 1188, 1198 (10th Cir.1989) (citing

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506

(1989)).  Although *Davis* is an unpublished decision and may not be relied on as

precedent, it is factually on all fours with the allegations of Mr. Dade's petition, and

---

[2]Petitioner's unsupported allegations are also questionable given the amount he still owes ($4,772.84) on the $5,000 fine.  Ex. A, attach. 10.

therefore is persuasive in disposing of the instant action.  *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.

Petitioner does not dispute that he has consented to participate in the IFRP and has most recently agreed to pay $25.00 per quarter toward his financial obligation.  *See* Ex. A, ¶ 19, and attach. 6, 8.  As such, petitioner authorized the BOP to deduct those amounts from his trust fund account.  *See Bradshaw v. Lappin*, 738 F. Supp. 2d 1143, 1152 (D. Colo. 2010) (rejecting plaintiffs' constitutional claims based on IFRP deductions where plaintiffs "voluntarily,"albeit reluctantly, entered into written agreements to participate in the program; "[o]nce they did so, the BOP was expressly authorized by the Plaintiffs to begin deducting the $ 25 from their trust accounts each quarter").  The court finds that the BOP's operation of the IFRP in implementing a payment schedule to satisfy petitioner's court-ordered fine does not run afoul of the Constitution or federal law.

WHEREFORE, for the foregoing reasons, it is hereby

**RECOMMENDED** that petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 7) be denied and dismissed.  It is

**FURTHER RECOMMENDED** that petitioner's Motion to Reconsider [the April 21, 2011 Order Denying Preliminary Injunction] (Docket No. 20) be denied.  It is

**FURTHER RECOMENDED** that petitioner's Motions for Summary Judgment [Docket Nos. 25 and 26] be denied.

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file

specific written objections to the above recommendation with the District Judge

assigned to the case. A party may respond to another party's objections within fourteen

(14) days after being served with a copy. The District Judge need not consider frivolous,

conclusive, or general objections. A party's failure to file and serve such written, specific

objections waives de novo review of the recommendation by the District Judge, *Thomas

v. Arn*, 474 U.S. 140, 148-53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and also waives

appellate review of both factual and legal questions. *Makin v. Colorado Dep't of

Corrections*, 183 F.3d 1205, 1210 (10th Cir.1999); *Talley v. Hesse*, 91 F.3d 1411,

1412-13 (10th Cir.1996).

Dated this 25th day of July, 2011 in Denver, Colorado.


s/Michael J. Watanabe

_____
MICHAEL J. WATANABE
United States Magistrate Judge